| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | C–04-3055 DLJ |
| ) | CR-04-40127-DLJ (related case) |
| THOMAS GROSSI, LAURETTA WEIMER ) and ALBERT B. DEL MASSO ) | |
| ) | |
| In the matter of $608,916.58 ) | ORDER |
| IN U.S. CURRENCY, AS SUBSTITUTE *)* *RES* FOR REAL PROPERTY LOCATED AT ) 2638 MARKET STREET, OAKLAND, ) CALIFORNIA ) | |
| _____ ) | |

In 2004, Thomas Grossi was the owner of a warehouse located at 2638 Market Street, Oakland. This property was found to be the site of a large scale indoor marijuana grow. Grossi was convicted of offenses related to the property, and the property has now been forfeited. Following seizure the property had been sold and the proceeds are now held subject to appropriate distribution orders by the Court.

I.  Background

On June 8, 2007 the Court held a hearing to determine Petitioner Lauretta Weimer's legal interest in the forfeited property. Following the hearing, the Court ordered that the forfeiture should not apply to a $100,000 loan made by Weimer to her brother, the Defendant Grossi. The Court found that this money had been used by the defendant to purchase the Market Street property. In making that determination, the Court relied in part on a promissory note executed by Grossi in favor of Weimer which

reflected the terms of the loan.  The terms of the promissory note called for repayment in full on or before November 30, 2006.  At the June 8, 2007 hearing the Court did not have before it any evidence regarding possible repayment of the loan.  Consequently, the Court deferred deciding on the amount of payment due back from the Government to Weimer, and ordered that Grossi file with the Court evidence on any payments made by Grossi on the loan, both as to interest and to principal.

On June 13, 2007, in response to the Court's order, a "Notice of Payments on Lauretta Weimer Loan re: Preliminary Order of Forfeiture" was filed with the Court.  This document states in part that "[f]rom the date 1 January 2004 . . . to 4 June 2004 .. .five monthly payment of $3,133.64 were made, of which total amount approximately $3335.00 represented interest . . . and $12,333.20 represented principal" leaving an amount of unpaid principal of $87,666.80.  <u>See</u> Notice of Payments on Lauretta Weimer Loan dated June 13, 2007 at Par. 1.  This filing also states that, "[s]ubsequent to 4 June 2004, Grossi continued sending funds to his sister, Lauretta Weimer, until an amount equal to his obligation to her under the promissory note had been paid over."

As this document is signed by Attorney David Michael as counsel for Lauretta Weimer, by its order of June 27, 2007 the Court informed the parties that it would proceed on the assumption that Weimer shared in the above interpretation of the status of the

2

promissory note and that it would rule in accordance with that assumption. The Court further stated that "[i]f for any reason, the Court's interpretation of the June 13, 2007 filing is incorrect" the parties had 10 days from the date of the order to clarify Weimer's position on the status of the repayment.

On July 9, 2007 counsel Michael filed a document entitled "Petitioner Lauretta Weimer's Supplemental Memorandum re Modification and Clarification of Preliminary Order of Forfeiture." Despite its title, the memorandum does not, as specifically requested by this Court, address Weimer's position directly. In part this filing argues that "denying Petitioner any part of her $100,000" would be an excessive fine against Grossi.

This document also argues that "there really no longer exists a promissory note and deed of trust related to Petitioner Weimer for which any subsequent payments may have been made" because of the sale of the property and that "[a]ny monies paid by Thomas Grossi to his sister, Lauretta Weimer, were not made pursuant to the promissory note." Counsel cites no factual basis or legal authority for this position. Moreover, this language appears to contradict the filing of June 13, 2007, which stated that Grossi continued sending funds to his sister, Lauretta Weimer, "until an amount equal to his obligation to her **under the promissory note** had been paid over." See Notice of Payments on Lauretta Weimer Loan re: Preliminary Order of Forfeiture, filed June 13, 2007, (emphasis

3

added).

Because of the uncertainty remaining after these pleadings, the Court ordered counsel to provide more information regarding the payments. In response to the Court's Order, on July 30, 2007, petitioner filed a Supplemental Memorandum. This Memorandum, along with a Second Supplemental Memorandum filed on July 31, 2007, demonstrate that for the 35 month period from February 1, 2004 through December 1, 2006, Grossi made monthly payments on the note in the amount of $3,133.64 to Weimer. This total payment of $109,677.40 pays off the note in full.

II. Legal Standard

Third party rights under forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2. Rule 32.2(b) provides in pertinent part:

>     (c) Ancillary Proceeding; Entering a Final Order of Forfeiture.
> (1) In General. If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . ..
>
>     (2) Entering a Final Order. When the ancillary
>     proceeding ends, the court must enter a final order of
>     forfeiture by amending the preliminary order as
>     necessary to account for any third-party rights.

III.  ARGUMENT

The situation facing the Court appears to be rather unique. Neither party has cited to the Court, nor is the Court aware of, any reported case which addresses the situation here where the third party's interest in the forfeited property is in the form of

4

a loan, and while the loan was outstanding in part at the time the unlawful activity occurred, now at the conclusion of the forfeiture proceedings the loan has been fully repaid.  Two issues face the Court.  The first issue is what payment, if any, is now due to Weimer.  The second issue is as to what distribution should be made of the proceeds if there is no payment to Weimer.

In order to determine what payment is now due to Weimer, petitioner encourages the Court to focus on the language of 21 USC §853(n)(6).  This section states in pertinent part that the court should look at the "interest of the defendant **at the time of the commission** of the acts which gave rise to the forfeiture of the property under this section" and that the "the court shall amend the order of forfeiture in accordance with its determination." 21 USC §853(n)(6). (emphasis added)

Weimer argues that her right to payment became fixed "at the time of the commission of the acts"[1] and that no matter what subsequent payments Grossi made on the loan, Weimer's right to payment accrued at that time.  Weimer asserts that to assess the situation any differently would mean a double recovery for the Government.

In support of his argument, Weimer cites to <u>United States v. BCCI Holdings (Luxembourg) S.A.</u>, 46 F.3d 1185, 1190 (D.C. Cir.

---

[1] The plea agreement in this case lists the relevant time period as January 2004 until June 30, 2004.

5

1995), cert. denied sub nom. Chawla v. United States, 515 U.S. 1160 (1995). In BCCI, a RICO case, third parties were given the opportunity to challenge a forfeiture order. In order to do so they needed to demonstrate that they had a legal interest in property which had been ordered forfeited. 18 U.S.C. § 1963(l)(2). Two of the petitions at issue were filed by persons claiming to represent a class of worldwide depositors in BCCI. The "class petitioners" argued that they were the beneficiaries of a constructive trust. The District Court rejected the constructive trust without granting petitioners an evidentiary hearing, and petitioners appealed.

    On review, the Circuit Court reiterated that "a third party's claim is to be measured not as it might appear at the time of litigation, but rather as it existed at the time the illegal acts were committed." While the Court's rationale in the BCCI case for focusing on this language was to protect the government, it does not change the fact that the language of the statute is mandatory. Moreover, the government can point to no case where actions taken subsequent to the forfeiture changed an innocent third party's right to recovery. Based on the language of the statute, the Court finds that Weimer's right to recovery was fixed at the time of the illegal acts. In June of 2004, the latest date of the illegal acts, Grossi had repaid $12,333.20 in principal on the promissory note leaving an amount of unpaid principal of $87,666.80. From that

point in time forward, the government was in possession of forfeited property belonging in part to Weimer with a value of Weimer's portion of $87,666.80.  Once the Court officially determined at the June 8, 2007 hearing that Weimer had a valid interest as a third party in the Market Street property, the government's payment obligation to Weimer was formally confirmed.

The next issue facing the Court is what is the effect of Grossi's continued payments under the promissory note after the date of the forfeiture and how does that affect the government's payment obligation.  From the date of the forfeiture forward, Grossi continued making payments to Weimer on an obligation which was in fact an obligation of the government.  In effect Grossi's payments created an equitable subrogation of the government's obligation, a theory which is recognized by California law and which has been adopted in the Ninth Circuit.  See e.g., Kenney v. U.S., 458 F.3d 1025 (9th Cir. 2006). By undertaking to pay a debtor's obligation to a creditor, the subrogee is equitably subrogated to the position of the creditor and succeeds to the creditor's rights against the debtor. See also Reliance Nat'l Indem. Co. v. General Star Indem. Co., 72 Cal.App.4th 1063, 85 Cal.Rptr.2d 627, 635 (1999).  Applying the theory of equitable subrogation allows the Court to fashion a remedy which makes sense in this case.  If Grossi had never paid another cent to Weimer after the time of the seizure, there is no question that the

obligation to pay the outstanding amount would fall to the government. While it is clear that the government was obligated to pay Weimer the value of her loan minus pre-seizure payments on the loan by Grossi, if the government were currently to repay Weimer that amount, she would receive a double recovery as she has now been paid the entirety of the outstanding loan.  The Court does not believe that such a windfall is required by applicable forfeiture law and declines to order such a payment.

The question remaining is should the proceeds from the forfeited property be partially paid to Grossi or retained by the Government?  If the proceeds are retained, the effect is that Grossi has paid the loan twice and that the government is allowed to keep the money it was obligated to pay the third party claimant Weimer.  This means that the government will receive a full forfeiture of all of Grossi's interest in the Market Street property and will also receive additional funds of Grossi independently paid by him to his sister to satisfy his debt to her.

Under these circumstances it appears to the Court that equity requires that the government distribute to Grossi the funds which he paid to Weimer which otherwise would have been paid by the government to Weimer.  The theory of equitable subrogation permits this result. *In re Johnson's Estate,* 240 Cal.App.2d 742, 50 Cal.Rptr. 147, 149 (1966) (internal quotation omitted)(equitable subrogation "is not a fixed and inflexible rule" and its

development is "the natural consequence of a call for the application of justice and equity to particular situations.")

Based on the foregoing, the Court finds that the amount forfeited by Grossi on the Market Street property should be reduced by $87,666.80, which amount represent's the government's obligation to Weimer as repaid by Grossi.  This amount should be paid to him from the forfeiture proceeds now held by the Court along with interest at the statutory rate.

IT IS SO ORDERED

Dated: August ___10___, 2007

_____
D. Lowell Jensen
United States District Judge